BETSEY, The, v. DUNCAN.   See Case No. 1,367.

BETSEY, The, (HOLLINGSWORTH v.)   See Case No. 6,612.

BETSEY, The, (The MONTGOMERY v.)   See Case No. 9,734.

BETSINA, The, (TUNNO v.)   See Case No. 14,236.

---

## Case No. 1,364.

### The BETSY.

[2 Gall. 377.] [1]

Circuit Court, D. Massachusetts.   May Term, 1815.

PRIZE — NEUTRAL GOODS — FRAUD BY NEUTRAL — CONCEALMENT OF ENEMIES' GOODS.

1. Where a captured cargo belonged, one half to a neutral, and the other half to an enemy, and there were papers on board, from which the enemy's interest might be discovered, it was held, that the share of the neutral should not be subjected to confiscation, in consequence of his having persisted in a claim for the whole made by his agent, nor of his having sworn falsely, that he was solely interested; such affidavit not having been employed for any fraudulent purpose in the cause, and not having been filed, until after an order for further proof had passed, as to one moiety, and a decree of con-

[1] [Reported by John Gallison, Esq.]

demnation had by consent been entered against the other moiety.

[Cited in U. S. v. One Hundred Barrels of Cement, Case No. 15,945.]

2. If a neutral fraudulently attempt to cover and claim an enemy's interest in a prize court, he will not be permitted to introduce further proof, to show his own neutral interest in the same property.

See The St. Nicholas, 1 Wheat. [14 U. S.] 417; The Fortuna, 3 Wheat. [16 U. S.] 236. [Cited in the Cuba, Case No. 3,457; The Lilla, Id. 8,348; U. S. v. The Lilla, Id. 15,600; U. S. v. One Hundred Barrels of Cement, Id. 15,945.]

3. A court of prize will never busy itself in unravelling a web of fraud, to aid a party who has sought to impose upon it.

[Cited in The Bothnea, Case No. 1,686; The Lilla, Id. 8,348; U. S. v. One Hundred Barrels of Cement, Id. 15,945.]

[Appeal from the district court of the United States for the district of Massachusetts.

[In admiralty. Proceedings to condemn as prize the Betsy and cargo, (Stoughton, Spanish consul, claimant for Maury & Co.) The district court condemned the whole cargo, (nowhere reported.) Maury & Co. appeal as to a moiety thereof. Reversed.]

The Betsy, a British vessel chartered by Maury and Co. of Malaga, was captured on a voyage from Malaga to St. Petersburg. No invoice was found on board. The bill of lading expressed the cargo to be shipped by Maury and Co., consigned to order, without declaring on whose account and risk. The master, in his answers to the standing interrogatories, affirmed the cargo to be, as he believed, the sole property of Maury and Co., excepting some few articles, which belonged to himself. He further stated, that he was to deliver the cargo at St. Petersburg to any person who should produce a bill of lading. From a letter on board, written by Maury and Co. to Amberger and Co. of St. Petersburg, and dated April, 1813, it appeared, that the cargo was "on joint account with a London house;" and there was also a memorandum, apparently written by the captain, in the words following:—"Instruction.—That any merchants at St. Petersburg, producing me the bill of lading for the cargo now on board, shipped by Maury and Co. of Malaga, which I left in the hands of Mr. Osman, signed on the back Maury and Co., with other directions from the house in London, will be entitled to have the cargo delivered to them."

The whole cargo was claimed, as the property of Maury and Co. by the Spanish consul, before any knowledge on his part of the interest of the British house. Upon the evidence of the papers on board, and the preparatory examinations, the district court, in October, 1813, decreed condemnation of one moiety of the cargo, as enemies' property, [nowhere reported.] As to the other moiety further proof was ordered. In September, 1814, a pro forma condemnation was decreed, as to the moiety ordered for further proof, [nowhere reported,] and an appeal was thereupon interposed to this court, the claim to the other moiety having been abandoned by the counsel for the claimants.

In January, 1814, Maury and Co. wrote to the consul, stating themselves to be the sole owners of the cargo, and transmitting an invoice supported by an affidavit of one of the firm, expressly declaring the property to be exclusively in them. This paper was not produced in court, until after the claim as to the condemned moiety had been abandoned, nor was any use made of it on the part of the claimants.

The evidence taken under the order for further proof was now produced. It consisted of sundry letters between Maury and Co. and Reeves and Co. of London, which disclosed the whole history of the transaction, and clearly proved the Spanish and the British houses to have been, from the outset, equally interested in the adventure.

Blake, Dist. Atty., for the captors.

1. There is no evidence of the neutrality of any part of the cargo. The further proof now introduced might be sufficient for that purpose, were not its credit entirely destroyed by the fraudulent conduct of the claimants. Maury and Co., having been informed that the whole had been claimed on their behalf, and supposing, no doubt, that no proof of British interest had appeared, declare, under the solemnity of an oath, that the whole belonged to them. This affidavit they send to the Spanish consul, supposing him ignorant of the transaction, in order that it may be palmed upon the court. The credit of the further proof rests entirely upon Maury's oath, and he is not to be believed after such prevarication.

2. Here has obviously been an attempt to cover enemies' property. It is a duty to have on board papers showing distinctly to whom the property belongs. There was no document on board, from which the interest of the English house could be discovered. There was, it is true, a sealed letter stating the fact, and there was a short memorandum, which contained some hint of it. But these formed no part of the ship's papers, nor were they intended to be mixed with them, but to be kept in the captain's pocket. It was by accident only, that they came into the hands of the captors. Such attempted concealment, on the part of the neutral, involves the confiscation of his own property. He is not permitted, after a detection, to say, "I did indeed attempt to cover the whole, but so much is really my property." The Eenrom, 2 C. Rob. Adm. 1. The captain has asserted the whole of the property to belong to Maury and Co. He must be supposed to know, for he is bound to know to whom the property belongs. There must always be some person on board, who is acquainted with the truth of the transaction, and, there being no super-

cargo, that person must, in this case, be presumed to be the captain. His knowledge may also be inferred from the memorandum, which has been read. That the false swearing of the captain involves the property under his charge appears from the case of The Shepherdess, 5 C. Rob. Adm. 262.

3. Admitting that Stoughton's claim alone would lead to no penal effect, yet there is here a complete ratification on the part of Maury and Co., and the case is, therefore, to be viewed in the same light, as if the claim had been made by themselves. "Omnis ratihabitio retrotrahitur." The letter from Maury and Co. to Stoughton thanks him for his interference, and forwards the affidavit, evidently with an intent that it should be used in support of the claim. If, then, the claim is to be considered as the claim of the principal, the property must be condemned upon the principles of the cases cited. The neutral, having falsely claimed the whole, is not allowed to abandon a part, and claim the residue.

Prescott and W. Sullivan, for the claimants.

The papers, from which it has been attempted to infer fraud and falsehood on the part of the claimants, were filed while the counsel were ignorant of the real state of the transaction, and merely to comply with a suggestion from the court below, that some proof should be furnished of property in the neutral claimants. They were not papers found in the vessel, nor regularly admissible in the cause. No use has in fact been made of them. They were not filed until after the order for further proof had passed, and then only de bene esse, and as matter of form. They are entirely superseded by the further proof now received, and should, therefore, be taken out of the cause. The case then presents a fair commercial transaction, the origin and all the circumstances of which are disclosed to the court.

(STORY, Circuit Justice. The letter and affidavit having been on file, the captors have a right to use them, subject, however, to any explanation, which the other party may offer.)

It is clearly proved, that, in the origin of the transaction, one half of the cargo belonged to the neutral. The only question then is, whether the neutral has forfeited his right by any misconduct? This question may be considered, 1. As to the effect of the papers found on board. 2. As to the effect of the papers since introduced into the cause.

1. The penalty of confiscation is confined to cases, where there is nothing on board, which can lead the court to a knowledge of the enemy's interest. Such was the case of The Eenrom. But in the case before the court, no paper on board is contradicted by evidence now introduced. The form of the bill of lading is far from being an uncommon one. It might be explained from the invoice. It is said, indeed, that no invoice was found on board. If so, the reason is obvious. The selection of the consignee at St. Petersburg being left to the London house, the invoice was sent to them, together with the bill of lading, which the master left in the hands of one of the house of Maury and Co. For the same reason the cargo was addressed to order generally.

(STORY, Circuit Justice. Was it not the duty of the neutral to put on board such evidence, as would enable the master to state the enemy's interest?)

A mere negligence or omission will not subject the neutral to the severe penalty of confiscation. Where he deliberately attempts to cover enemies' property, and there is nothing on board, by which the enemy's interest could be detected, he is not allowed to offer evidence in contradiction to the original documents. He cannot show, that the character given to the whole was false only as to a part. But this is not the present case. There was here no designed concealment. There were reasons sufficient for not instructing the master as to the property in the cargo. He was a stranger. It could not be presumed, that he was to be examined. He had, besides, no other connexion with the cargo, than to carry it to St. Petersburg, and there deliver it to persons pointed out. No injury has been done to the cruiser, for in fact no cruiser ever relies upon the information of the captain. Had the captors examined, the letter of the 27th of January could not fail to disclose to them the real nature of the transaction, and the enemy's interest in a part of the cargo. The existence of such a letter on board, which there does not appear to have been any attempt to conceal, is the strongest possible evidence, that no fraud was intended. There were, therefore, documents on board, which fully disclosed, that a part of the cargo belonged to a British owner. In the captain's memorandum, no attempt is made to keep out of sight the London house.

2. Has any thing been done by the neutral since the sailing of the vessel from Malaga, which can subject the cargo to forfeiture? No irregularity committed out of court can be a cause of confiscation. The reason for this penalty, generally, is, that the papers are such as to deceive and mislead the cruiser. If, on production of further proof, there be an irregularity, or even an attempt at fraud, still, if enough appears to show the property to be as claimed, confiscation will not follow. Now, the declaration of one of the partners attached to the invoice, is no part of the documentary evidence. Indeed it is not evidence of any sort, being only the voluntary declaration of the party.

(STORY, Circuit Justice. If this paper be

admissible at all, it must be as an affidavit supplementary to the claim; for though an agent may claim, yet if sufficient time intervene, the principal must support it by his affidavit.)

Had this paper been found on board, the consequences must have been highly penal. But, in the manner in which it has been now produced, it can have no influence on the cause.

(STORY, Circuit Justice. The only question of difficulty in this case is, whether, it appearing to the court, that the neutral has a right, this false declaration shall induce the court to shut out the evidence? Had this declaration appeared among the ship's papers upon the original hearing, further proof would, no doubt, be refused. It is well settled, that the neutral shall not be permitted to introduce evidence to show a right to part, after having fraudulently attempted to obtain the whole. But, if the evidence is introduced, and the right of the neutral appears, can a false declaration of this nature defeat its effect?)

Prescott. The court attends to no irregularity or iniquity, but such as relates to the cause. It is not the making of the invoice in Malaga, or swearing falsely to it there, that could induce confiscation, but the effect and use of it here, to deceive and impose upon the court. But in fact no use whatever has been made of it, and it is, therefore, to be entirely disregarded.

STORY, Circuit Justice. This is the case of a British ship, captured on a voyage from Malaga to St. Petersburg. One half of the cargo has been condemned as enemies' property; and the other moiety was ordered for further proof in the district court, having been claimed in behalf of Messrs. Maury and Co. of Malaga. The further proof has now come in, and the cause is to be decided upon its merits. The preparatory examinations asserted the whole property to belong to Messrs. Maury and Co.; but there was a letter on board, which clearly narrowed their title to a moiety. The whole cargo was, notwithstanding, claimed by their agent and that claim, as to one moiety, was not abandoned until the appeal to this court at October term, 1813. In January, 1814, an invoice of the property, with an accompanying letter and affidavit, was forwarded by Messrs. Maury and Co. to their agent in the United States, and at May term, 1814, these papers were regularly filed in the cause. In that affidavit, invoice and letter, the whole property is explicitly asserted to belong to Messrs. Maury and Co., and not the slightest intimation is given of any hostile interest. Indeed, Messrs. Maury and Co. appear at that time to have been ignorant, that their counsel had abandoned the claim of one moiety, as utterly indefensible.

The further proof, which has been brought in at this term, under an order made in the district court, shows incontrovertibly, that Messrs. Maury and Co. were not owners of more than one moiety of the cargo, and that the other moiety belonged to Messrs. Reeves, Bell and Co. of London. This proof would, in ordinary cases, have been deemed entirely satisfactory; and the only difficulty arises from the gross falsity and fraud of the invoice and affidavit originally furnished by Messrs. Maury and Co. respecting their proprietary interest. "Falsus in uno, falsus in omnibus," is a maxim of sound morals, as well as of distributive justice. If these fraudulent papers had been originally produced before the order for further proof, the court would have felt itself bound to deny it; for it will never trust a person with an order for further proof, who has already shown, that he is not only capable of abusing, but has been detected in an attempt to abuse it. And if these papers had been inserted in the cause with a view to support the claim to the whole property, I should have held the party bound by his misconduct. A court of prize will never busy itself in unravelling a web of fraud, to aid the party, who has sought to impose upon it. If he knowingly assert and persist in a fraudulent claim, it will affect with forfeiture the whole of his property, which is engaged in the transaction. The Eenrom, 2 C. Rob. Adm. 1; The Graaff Bernstorf, 3 C. Rob. Adm. 109; The St. Nicholas, 1 Wheat. [14 U. S.] 417. There can be no doubt, that the present claimants intended to defraud the captors of their lawful rights, and to withdraw hostile property from confiscation. That they have failed in the attempt is not owing to any repentance or good will on their part.

Still however, in point of fact, this dishonorable contrivance was not actually used to the prejudice of the cause. The good sense and intelligence of counsel had induced them, before the arrival of these papers, to consent to an affirmance of the decree of condemnation of one moiety of the property, and thereby prevented the claimants from committing themselves. Until the papers were actually used, there was a locus paenitentiae. In order to entitle the court to pronounce confiscation upon the moiety now claimed, by way of penalty for the fraud, there should be a combination of intention and act. In this case, the claimants have not, if I may use the expression, been caught in delicto. The only possible effect, therefore, that could be attributed to their misconduct, would be to throw a shade of doubt and suspicion over the further proof now offered to the court. On examining it, however, I cannot but feel a strong impression, that it contains the real, undisguised transactions between the parties; and as it stands completely corroborated by the original documentary evidence, I shall not hes-

itate to give it entire credit, especially as it is vouched by the American consul.

I decree restoration of the moiety now claimed by Messrs. Maury and Co., upon the payment of the full costs and expenses of the captors.